

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

TODD T.,

               Plaintiff,

-v-

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.
_____

23-CV-00465-MJR

DECISION AND ORDER

     Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 18)

     Plaintiff Todd T.[1] ("Plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying his application for Supplemental Security Insurance ("SSI") pursuant to the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, Plaintiff's motion (Dkt. No. 15) is denied, and defendant's motion (Dkt. No. 17) is granted.

---

[1] In accordance with the District's November 18, 2020, Standing Order, plaintiff is identified by first name and last initial.

## BACKGROUND[2]

Plaintiff filed for SSI on December 20, 2018, with an alleged onset date of September 1, 2010. (Administrative Transcript ["Tr."] 101, 244-49). The application was initially denied on March7, 2019, and on reconsideration on May 20, 2019. (Tr. 125-36, 140-51). Plaintiff filed a written request for hearing on June 12, 2019. (Tr. 152).

An administrative hearing was conducted by Administrative Law Judge ("ALJ") Kieran McCormack via video conference on September 1, 2021, at which Plaintiff participated, along with counsel. (Tr. 41-76). A vocational expert also testified.

On September 20, the ALJ issued an unfavorable decision. (Tr. 15-40). The Appeals Council denied review. (Tr. 1-6). This case followed.

## DISCUSSION

I.   *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision

---

[2] The Court presumes the parties' familiarity with Plaintiff's medical history, which is summarized in the moving papers.

rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.   *Standards for Determining "Disability" Under the Act*

A "disability" is an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment

or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §§423(d)(2)(A), 1382c(a)(3)(B).  The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience."  *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process."  20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).  First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity."  *Id.* §§404.1520(b), 416.920(b).  If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience."  *Id.* §§404.1520(b), 416.920(b).  Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment."  *Id.* §§404.1520(c), 416.920(c).  To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  *Id.* §§404.1520(c), 416.920(c).  As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations.  *Id.*

§§404.1520(c), 416.920(c). Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §§404.1520(d), 416.920(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.* §§404.1520(d), 416.920(d).

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §§404.1520(e), 416.920(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §§404.1545(a)(1), 416.945(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §§404.1520(f), 416.920(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* §§404.1520(f), 416.920(f). Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §§404.1520(g)(1), 416.920(g)(1). If the claimant can adjust to other work, he or she is

not disabled. *Id.* §§404.1520(g)(1), 416.920(g)(1). If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.* §§404.1520(g)(1), 416.920(g)(1).

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

   III.   *The ALJ's Decision*

Using the five-step sequential analysis in 20 C.F.R. § 416.920(a), the ALJ first determined that Plaintiff had not engaged in substantial gainful activity since his since December 20, 2018, his SSI application date. (Tr. 20). At step two of the sequential evaluation, the ALJ determined that Plaintiff's severe impairments were: bipolar disorder; depressive Disorder; generalized anxiety disorder; autism spectrum disorder; alcohol dependence; cannabis dependence; cocaine dependence; heroin dependence; opiate dependence; and benzodiazepine dependence. (Tr. 21). The ALJ also found that Plaintiff had non-severe impairments, including a 2021 fracture to the middle phalanx of his left hand. (Tr. 21-22). At step three of the sequential evaluation, the ALJ determined that none of Plaintiff's impairments, singly or in combination, met or medically-equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 22-23).

Before proceeding to step four of the sequential evaluation, the ALJ determined that, Plaintiff retained the capacity to perform a full range of work at all exertional capacities, but could only work at low stress jobs (defined as jobs containing no more than simple, routine, and repetitive tasks, involving only simple work related decisions,

with few, if any, workplace changes) where there is only occasional interaction with supervisors, coworkers, and/or the general public. (Tr. 23).

Because Plaintiff had no prior, relevant work, the ALJ proceeded to step five of the sequential evaluation. (Tr. 30). At step five, the ALJ determined that there were jobs existing in significant numbers in the national economy that Plaintiff could perform, such as Laundry Worker, Merchandise Marker, and Hand Packager. (Tr. 31-32). Accordingly, the ALJ determined that Plaintiff was not disabled under the Act, and thus not eligible for SSI payments. (Tr. 32).

IV.   *Plaintiff's Challenge*

Plaintiff argues that the case must be remanded, because the ALJ: (1) failed to consider whether Plaintiff would be able to maintain employment during any probationary period; and (2) failed to find Plaintiff's left-hand injury to be a severe impairment. The Court finds Plaintiff's arguments without merit.

Plaintiff's argument that he could not complete the probationary period of any unskilled job identified at step five—Hand Packager, Laundry Worker, and Merchandise Marked—because he could only occasionally interact with supervisors is unpersuasive.

Plaintiff bases his argument on the Second Circuit's decision in *Sczepanski v. Saul*, 946 F.3d 152, 155-56, 158 n.6 (2d Cir. 2020). *Sczepanski*, however, is distinguishable from this case. *Sczepanski* held that the ability to complete a probationary period is relevant to a claimant's ability to perform jobs identified at step five and discussed this issue in the context of absences; it did not find—as Plaintiff suggests—that completing a probationary period requires more than occasional interaction with supervisors. *See id. Sczepanski* mentioned this issue in passing in a footnote, citing an

out-of-circuit case. *Sczepanski*, 946 F.3d at 158, fn. 6 (*citing Shelton v. Colvin*, No. 1:14-cv-01920-SEB-TAB, 2015 WL 13739358, at *3 (S.D. Ind. Oct. 13, 2015)). *Shelton* held:

> These jobs require a worker to go through a probationary period during which he must have more than brief, superficial interaction with supervisors and co-workers … According to the ALJ, Shelton is not able to have more than brief, superficial interaction with supervisors and co-workers. This dichotomy compels the conclusion that Shelton will be unable to get through the required probationary period at each of the jobs used to deny his claim.

*Id.*

Thus, the Court in *Shelton* had very different facts—vocational expert testimony that the probationary period required more than incidental interaction with supervisors and an RFC finding for the opposite. *See id.* By contrast, here, the RFC was for occasional interaction with supervisors, which is defined as occurring up to one-third of the day. *See Program Operations Manual System* DI 25001.001.A (defining "occasionally" as occurring "at least once up to one-third of an 8-hour workday."). The vocational expert did not testify, nor has the Plaintiff presented evidence, that a person with this limitation could not complete the probationary period. (*See* Tr. 68-73). Rather, the vocational expert specified that a person with Plaintiff's RFC and vocational profile *could* perform the jobs identified at step five, and the ALJ properly relied on this testimony in his step five finding. (Tr. 31 (ALJ decision), 68-70 (vocational expert testimony); *see also* Tr. 71 (vocational expert stating that his testimony was consistent with the DOT).

Further, unskilled jobs—such as those relied on in step five here—involve only "simple duties that can be learned on the job in a short period of time . . . and a person can usually learn to do the job in 30 days." 20 C.F.R. § 416.968(a). Thus, any training during a probationary period, when a person would arguably have to interact with a supervisor, would be brief for these jobs. Also, unskilled jobs "ordinarily involve dealing

primarily with objects, rather than with data or people, and they generally provide substantial vocational opportunity for person with solely mental impairments. . . ." SSR 85-15, 1985 WL 56857, at *4 (Jan. 1, 1985). Thus, the vocational expert and ALJ appropriately found that Plaintiff could perform unskilled jobs even with only occasional interaction with supervisors and others. (*See* Tr. 31, 68-73).[3]

Plaintiff also contends that the ALJ erred in finding his fracture of the middle phalanx of his left hand non-severe at step two of the sequential evaluation. Again, the Court finds this argument unpersuasive. The ALJ considered this impairment, found it non-severe, and supported her finding with substantial evidence in the record. (*See* Tr. 21-22).

The ALJ considered that Plaintiff sustained a fracture to the middle phalanx of his left hand in a January 2021 car accident, but noted that, "[t]here was a lack of significantly abnormal findings at an April 2021 follow-up visit. For example, he had stiffness with flexion at the PIP joints in the left hand, but he was able to fully exten[d] the fingers and lay his hand flat on the table. He also had symmetric strength testing with normal tone in the upper extremities." (Tr. 22; *citing* Tr. 1963-64 (internal citations omitted)). The ALJ also noted that, "[t]here was a lack of objective showing of any more than minimal complications since the accident." (Tr. 22; *citing. e.g.*, Tr. 1584, 1588, 1593 (March and

---

[3] Plaintiff also raises what appears to be an ancillary argument that the ALJ did not properly evaluate the medical opinion of clinical neuropsychologist Dr. Tatyana Raby, Ph.D., who examined Plaintiff at the request of one of his mental health providers. Dr. Raby opined that Plaintiff is disabled dues to cognitive deficits and psychiatric status. (Tr. 29). The ALJ found Dr. Raby's opinion not persuasive, because Dr. Raby did not "provide much explanation" as to the limitations to which she opined and "her own exam findings do not fully support the opinion, including good attention and generally good performance on tasks. In addition, the opinion is inconsistent with the generally unremarkable psychiatric clinical findings in the rest of the evidence of record during and around the relevant period." (Tr. 29-30). The Court finds that the reasons given by the ALJ for rejecting Dr. Raby's opinion are supported by substantial evidence.

April 2021 physical examinations findings including that Plaintiff could move all extremities freely with no signs of muscle weakness and had no edema in his extremities)). Lastly, the ALJ noted that Plaintiff "declined physical therapy for his fingers and felt that he could exercise/work them himself." (Tr. 21; *citing* Tr. 1582).

## CONCLUSION

For the above reasons, Plaintiff's motion for judgment on the pleadings (Dkt. No. 15) is denied and defendant's motion for judgment on the pleadings (Dkt. No.17) is granted. The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:   February 3, 2026
         Buffalo, New York

_____
MICHAEL J. ROEMER
United States Magistrate Judge